IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

VHS ACQUISITION SUBSIDIARY NUMBER 7, INC., d/b/a SAINT
VINCENT HOSPITAL,

*Plaintiff-Appellee-Cross Appellant*,

v.

NATIONAL LABOR RELATIONS BOARD, et al.,

*Defendants-Appellants-Cross Appellees.*

On Appeal from the United States District Court
for the District of Columbia
Docket No. 1:24-cv-02577
The Honorable Trevor N. McFadden

**MASSACHUSETTS NURSES ASSOCIATION'S MOTION TO
INTERVENE ON BEHALF OF DEFENDANTS-APPELLANTS,
CROSS-APPELLEES**

Jack J. Canzoneri
McDonald Lamond Canzoneri, LLC
352 Turnpike Road, Suite 210
Southborough, MA 01772-1756
(508) 485-6600
jcanzoneri@masslaborlawyers.com

*Counsel for Intervenor, Massachusetts Nurses Association*

Dated: February 18, 2025

# CERTIFICATE AS TO PARTIES

**Parties:**

The following entities are parties to these consolidated cases:

### *Plaintiff-Appellee* in Case No. 25-5006, *Plaintiff-Appellant* in Case No. 25-5021

VHS Acquisition Subsidiary Number 7, Inc., doing business as Saint Vincent Hospital

### *Defendants-Appellants* in Case No. 25-5006, *Defendants-Appellees* in Case No. 25-5021

National Labor Relations Board, a Federal Administrative Agency

Jennifer Ann Abruzzo, in her Official Capacity as General Counsel of the National Labor Relations Board

Gwynne A. Wilcox, in her Official Capacity as Chairman of the National Labor Relations Board

Marvin E. Kaplan, in his Official Capacity as Member of the National Labor Relations Board

David M. Prouty, in his Official Capacity as Member of the National Labor Relations Board

Susannah Merritt, in her Official Capacity as Administrative Law Judge of the National Labor Relations Board

### *Amicus Curiae*

The American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO") was granted leave to file a brief *amicus curiae* on behalf of Defendants-Appellants National Labor Relations Board *et al.* before the District Court.

## ***Proposed Intervenor***

Proposed intervenor Massachusetts Nursing Association seeks leave to intervene before this Court.  Pursuant to Federal Rule of Appellate Procedure 26(a)(1), the Massachusetts Nursing Association states that it does not have a parent, affiliate, or subsidiary that has issued shares or debt securities to the public.

# I. INTRODUCTION

The Massachusetts Nurses Association (the "Union"), through counsel, respectfully moves for leave of Court to intervene in the above-captioned matter as of right, or, in the alternative, permissively.

The Union is the Charging Party in the proceeding of the National Labor Relations Board ("NLRB") which VHS Acquisition Subsidiary Number 7 d/b/a/ Saint Vincent Hospital ("Saint Vincent") unsuccessfully sought to enjoin, and with respect to which the District Court ordered a declaratory judgment invalidating the removal protections of the NLRB's administrative law judges ("ALJs"). Especially following an apparent change in the Government's position in similar agency cases, the Union has significant legal interests that it seeks to protect through intervention on appeal and urges that the Court grant its motion.

# II. FACTUAL BACKGROUND

The Union is the certified exclusive collective bargaining representative of a collective bargaining unit of non-supervisory registered nurses ("RNs") employed by Saint Vincent at Saint Vincent's hospital located in Worcester, Massachusetts. *Id.* Under the National Labor Relations Act ("NLRA"), the Union and Saint Vincent are subject to a duty to bargain, defined as a "mutual obligation . . . to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or

any question arising thereunder." 29 U.S.C. § 158(d). When an employer

"refuse[s] to bargain collectively with the representatives of his employees," it

commits an unfair labor practice that can be remedied by NLRB procedures. 29

U.S.C. § 158(a)(5). The same is true when an employer "interfere[s] with,

restrain[s] or coerce[s] employees" in the exercise of their right to self-

organization, discriminates against any employee "to encourage or discourage

membership in any labor organization," or discriminates against employees who

have filed charges or provided testimony before the NLRB. *Id.* §§ 158(a)(1), (3),

(4).

      In unfair labor practices ("ULPs") filed with the NLRB in 2022 and 2023,

the Union alleged that Saint Vincent committed a host of unlawful conduct

including the following: unilaterally withholding required bonus payments without

bargaining with the union; bypassing the union and entering into incentive

contracts with individual bargaining unit members; blaming the Union for Saint

Vincent's act of withholding incentive bonuses; wrongfully denying the Union

access to the facility; refusing to furnish information that the Union required for its

representational duties; and interfering with the processing and arbitration of

grievances under the parties' collective bargaining agreement. ECF No. 3-1 at 9–

13.[1]  Many of these charges alleged a violation of Saint Vincent's duty to bargain over mandatory terms and conditions of employment, while others also alleged that such a refusal was intended to chill protected activity, discourage Union support and membership, and retaliate against Union members for having participated in Board proceedings.

Finding merit in these charges, on May 23, 2024, the NLRB's General Counsel issued an administrative complaint against Saint Vincent setting a hearing date of June 14, 2024; Saint Vincent moved to postpone and the hearing was rescheduled to start September 9, 2024.  ECF No. 3-1 at 3.  The complaint incorporated close to 30 separate allegations of Saint Vincent's violations of the NLRA.  *Id.*  On September 9, 2024—the first day of the administrative hearing— Saint Vincent filed a complaint in the District Court seeking to stop the proceedings in their tracks.  The employer alleged that the NLRB proceedings were unconstitutionally structured, and sought an emergency temporary restraining order ("TRO") and a preliminary injunction against the Board's proceedings.  ECF No. 1.

After orally denying Saint Vincent Hospital's eleventh-hour motion at a hearing, ECF No. 9, the District Court ordered summary judgment briefing on the

---

[1] All docket citations are to the docket in the underlying District Court case, *VHS Acquisition Subsidiary No. 7 v. NLRB*, No. 1:24-cv-02577 (TNM).

merits of the Saint Vincent's claims. In an order issued on November 17, 2024, the District Court held that it lacked jurisdiction to hear two of the claims raised in the Complaint that were predicated upon alleged violations of the Seventh Amendment and separation of powers. ECF No. 28 at 1–2. The District Court also held, due to the prohibitions of the Norris-LaGuardia Act, 29 U.S.C. § 101 *et seq.*, it lacked jurisdiction to issue an injunction on Saint Vincent's remaining claim, which contended that NLRB ALJs were unconstitutionally insulated from presidential removal. *Id.* The District Court deferred (reserved) judgment on the merits of Saint Vincent's constitutional challenge to these protections. *Id.*

On December 10, 2024, the District Court granted Saint Vincent declaratory relief, holding that NLRB ALJs' removal protections are "unconstitutional." ECF No. 34 at 18. The District Court then formulated a remedy it reasoned removed the perceived unconstitutional limitation on removal, ECF No. 34 at 18– 21 (Parv IV), holding that it "thinks the sounder solution is to recognize that the ALJs are removable at will," *Id.* at 20. To implement this ruling, the District Court ordered

*[balance of page intentionally left blank]*

4

that the following language be severed from Section 7521 (5 U.S.C. § 7521), as shown by the strike-outs below:

> Section 7521 - Actions against administrative law judges.
> (a) An action may be taken against an administrative law judge ~~appointed under section 3105 of this title~~ by the agency in which the administrative law judge is employed. ~~only for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the Board.~~

5 U.S.C. § 7521 (strike-outs added to show severed text). The District Court found that the severed-language was "repugnant to the Constitution and therefore inoperative as applied to NLRB ALJs." ECF No. 34 at 20.

On January 17, 2025, the NLRB appealed the District Court's order, ECF No. 37, and on January 31, 2025 Saint Vincent cross-appealed, ECF No. 39.

## III.   ARGUMENT

The Union presents three points below in support of the Court granting its motion to intervene. In Part "A" the Union demonstrates that it meets the four-prong standard for intervention of the "as of right" that this Court has applied. In Part "B" the Union demonstrates it has standing in this matter (a necessary component of any motion to intervene). Finally in Part "C" the Union in the alternative demonstrates that, even assuming _arguendo_ the Union did not have a right to intervene, the Court should still grant the motion under standards governing permissive intervention.

**A.  The Court Should Grant The Union's Motion As Of Right Because The Union Has A Significant Legal Interest In The Case That Has Not Been Adequately Represented By The <u>Parties</u>.**

Although no rule governs appellate intervention, the "policies underlying intervention" in the district courts, i.e. FRCP 24, provide "guidance" for appellate intervention.  *See Cameron v. EMW Women's Surgical Center, P.S.C.*, 595 U.S. 267, 277 (2022) ("[n]o statute or rule provides a general standard to apply in deciding whether intervention on appeal should be allowed"); *see also United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*, 45 F.4th 426, 432 (D.C. Cir. 2022) ("Because the Federal Rules of Appellate Procedure are silent on the subject, we apply the intervention standards of Civil Rule 24.").

This Court has summarized the standard under FRCP Rule 24(a) that the movant must satisfy:

> As to the merits of intervention, the prospective intervenors must satisfy the four requirements of Rule 24(a)(2): (1) the motion for intervention must be timely; (2) intervenors must have an interest in the subject of the action; (3) their interest must be impaired or impeded as a practical matter absent intervention; and (4) the would-be intervenor's interest must not be adequately represented by any other party.

*In re Brewer*, 863 F.3d 861, 872 (D.C. Cir. 2017).

For the reasons set forth below, the Union meets each of these four requirements.[2]

### 1.    <u>The Union's Motion Is Timely</u>

This first requirement is easily met.  In order to be timely, the proposed intervenor must "move for intervention once it becomes clear that failure to intervene would jeopardize her interest in the action."  *Harrington v. Sessions*, 863 F.3d 861, 872 (D.C. Cir. 2017).  "The most important circumstance relating to timeliness is that the [non-party] sought to intervene as soon as it became clear that [its] interests would no longer be protected by the parties in the case."  *Cameron*, 595 U.S. at 280 (citing *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977)).

On February 11, 2025, the U.S. Department of Justice ("DOJ") filed a letter in *Axalta Coating Systems, LLC v. FAA*, No. 23-2376 (3d Cir.), <u>attached hereto</u>,

---

[2] As far as the Union is aware, every Court of Appeals that has been presented with a Union motion to intervene on appeal in similar cases involving employer challenges to the constitutionality of the NLRB's structure has granted that motion. *See Aunt Bertha v. NLRB*, No. 24-10855, ECF No. 177 (5th Cir. Feb. 5, 2025) (granting Union motion to intervene without opinion following agency letter stating it would no longer defend the constitutionality of NLRB Members' removal protections at oral argument"); *Spring Creek Rehab. & Nursing Ctr. LLC v. NLRB*, No. 24-3043, ECF No. 20 (3d Cir. Jan. 2, 2025) (granting Union leave to intervene under identical "exceptional circumstances for imperative reasons" standard); *YAPP USA Auto. Sys., Inc. v. NLRB*, No. 24-1754, ECF No. 33 (6th Cir. Nov. 21, 2024) (granting leave for unions to intervene upon finding that unions "have indisputable interests in this appeal because it directly implicates their statutory rights under the National Labor Relations Act").

stating that "that the Acting Solicitor General has decided that the multiple layers of removal restrictions for administrative law judges in 5 U.S.C. § 7521 do not comport with the separation of powers and Article II and that the United States will no longer defend them in litigation." Attached. For reasons which shall be explained in greater detail below, see below at section 4 of this part (III.A.4), the Government has recently completely reversed its position; it is now taking the exact opposite position as compared to the position it vigorously argued in this case before the District Court and other cases concerning the constitutionality of ALJ removal protections with respect to a number of administrative agencies. This is a crucial development that demonstrates that the NLRB is no longer able to protect the Union's interest in this case, and the Union has moved to intervene "as soon as it became clear" that is so.

Furthermore, the Union's motion is timely with respect to Saint Vincent's cross-appeal from the District Court's denial of injunctive relief. No briefing schedule has been set by this Court, and the required docketing statement forms, statement of issues to be raised, and certificate as to parties, rulings, and related cases are not due until March 10. No party would be prejudiced by the Union's intervention at this initial stage of the appeal.

Accordingly, the Union's motion is timely.

**2.     The Union Has A Legally Cognizable Interest
In The Outcome Of The Case.**

The Union has an undisputed "interest relating to the property or transaction

that is the subject of the action."  Fed. R. Civ. P. 24(a)(2); *see also In re Brewer*,

863 F.3d 861, 872 (D.C. Cir. 2017) ("(2) intervenors must have an interest in the

subject of the action").  The Union here—as the Charging Party that filed the ULPs

being heard before an ALJ in the subject Board administrative proceeding—clearly

has a protectable legal interest in receiving a decision on the merits of its charges

from the ALJ following conclusion of the proceedings before the agency.

Indeed, counsel for the Union appeared as counsel for Charging Party during

the entire ULP trial prosecuted by the Board's General Counsel (i.e., through

Region One which covers the New England region).  The ULP trial was held over

14 days from September 9 to December 12, 2024 and included testimony from

multiple witnesses that were Union representatives and counsel; the record

included over a hundred exhibits entered into evidence by Board's General

Counsel in support of the ULPs that was provided by the Union in support of the

ULPs.  Moreover, during that ULP trial Union counsel participated in all phases of

the litigation, including oral arguments on some issues and filing a post-hearing

brief in excess of one-hundred pages on February 10, 2025.  If Saint Vincent at the

ULP trial pending before the NLRB ALJ had advanced any of the arguments that it

advanced in the subject Complaint, and will presumably present on appeal before

this Court—the Union would have had a right at the ULP trial to argue about those issues and brief them, as well as in any appeal to the NLRB and any further proceeding in a court of appeals. Indeed, the Supreme Court has held that a union in the precise posture of the Union here has a right to intervene in a challenge to an NLRB order brought in a court of appeals. *UAW v. Scofield*, 382 US 205, 208 (1965) ("charging party . . . [has] a right to intervene").[3] The fact that Saint Vincent has chosen to attempt to circumvent the normal process for challenging NLRB actions and bring an independent action in the district court, does not alter the Union's right to intervene.

The NLRA provides for no private right of action to enforce its unfair labor practice provisions, 29 U.S.C. § 158, or to defend employees' statutory right to self-organization, *id.* § 157. Accordingly, the Union and its members have no other legal recourse to vindicate their statutory rights—or to prevent any further deterioration of the collective bargaining relationship caused by unremedied unfair

---

[3] In *Scofield*, a unanimous Supreme Court explained that the interest of a charging party in NLRB proceedings differs from that of the Board such that intervention is warranted as a matter of law. There, the Court rejected the argument that the charging party was just "another member of the public whose interests the Board is designed to serve." *Id.* at 218. Instead, the Court explained that the Board's duty to enforce "public rights" did not "exclude[] recognition of parochial private interests." *Id.* Because the NLRA "interblend[s]" "public" and "private interests," "the charging party may have vital private rights in the Board proceeding[.]" *Id.* at 220 (cleaned up).

labor practices—other than participating in the NLRB proceedings that Saint
Vincent seeks to enjoin.

The Union's interest is not limited, however, to ensuring the availability of
*any* forum where its unfair labor practice charges may be heard. The Union has a
further interest in ensuring the *adequacy* of the forum. Consistent with
Congressional intent, the Union has a protectable interest in insisting that its case
be decided by an *independent* and *impartial* ALJ, insulated from undue political
pressure by tenure protections that ensure that the ALJ can only be removed or
disciplined for good cause shown—not for reaching a decision that displeases
superior agency officials or the President. "The substantial independence that the
[APA]'s removal protections provide to [ALJs] is a central part of the Act's overall
scheme." *Lucia v. SEC*, 585 U.S. 237, 260 (2018) (Breyer, J., concurring in
judgment in part and dissenting in part). Responding to concerns that hearing
officers who were "in a dependent status . . . were mere tools of the agency
concerned and subservient to the agency heads," *Ramspeck v. Fed. Trial
Examiners Conf.*, 345 U.S. 128, 130–31 (1953), Congress acted to "insulate and
protect [ALJs] from agency influence and manipulation," *Vesser v. OPM*, 29 F.3d
600, 605 (Fed. Cir. 1994). As this Court has recognized, "[a] number of
provisions," including the removal protections held unconstitutional by the District
Court, "are designed to safeguard the decisional independence of [ALJs]."

*Mahoney v. Donovan*, 721 F.3d 633, 634–35 (D.C. Cir. 2013); *see also Nash v. Califano*, 613 F.2d 10, 16 (2d Cir. 1980) (ALJs' decisional independence is "designed to maintain public confidence in the essential fairness of the [administrative] process . . .by ensuing impartial decisionmaking").

The Union has a compelling interest in having its case adjudicated by an ALJ with decisional independence who is not a "mere tool" of agency leadership and subject to dismissal for failing to reach her superiors' desired outcome. Just as Saint Vincent claims harm from proceeding before a purportedly "illegitimate decisionmaker," *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023), the Union would be harmed by being compelled to proceed before an adjudicator who, contrary to Congressional intent, has been stripped of protections key to ensuring her decisional independence. In sum, the Union has an interest in ensuring that its case be heard as Congress intended—an aim that is directly frustrated by the District Court's declaratory judgment.

### 3. The Union's Legal Interest Would Be Substantially Impaired If Intervention Is Denied.

Having demonstrated the Union's substantial legal interest in the matter, it requires little further analysis to demonstrate that this interest would be impaired—indeed, potentially extinguished—absent intervention.

Saint Vincent's sought-after injunction seeks to leave the Union and its members with a right, but no remedy—and no forum in which to pursue it. As explained above, the Board has exclusive jurisdiction over unfair labor practice charges and the NLRA provides for no private right of action; thus, were Saint Vincent to prevail on its cross-appeal and secure an injunction, the Union would lack any forum to pursue its case. Depriving the Union of the opportunity to participate in this case as intervenor would thus leave the Union voiceless in a case in which its rights are ultimately at stake.

Similarly, the affirmance of the declaratory judgment would impair the Union's interest in an impartial and independent adjudication. While the Union may receive an adjudication of its rights if both the District Court's denial of the injunction and its grant of a declaratory judgment are affirmed, such an adjudication would be issued by an officer who—contrary to Congressional design—had been stripped of such officer's decisional independence. Even if the Union were to prevail before the ALJ, its interest in an independent and impartial adjudication would be impaired. *Cf. Axon Enters.*, 598 U.S. at 191 (in claim challenging the lawfulness of agency proceedings' structure, plaintiff "would have the same claim had it *won* before the agency").

### 4. The Union Will Not Be Adequately Represented By The NLRB.

Turning to the final (fourth) element bearing on a request by a party to intervene on appeal, this Court stated in *In re Brewer*, 863 F.3d 861, 872 (D.C. Cir. 2017), that "the would-be intervenor's interest must not be adequately represented by any other party." Applying that standard here, the Court should find that—in order to meet Rule 24's final requirement in this regard—the Union must show that the NLRB's representation of the Union's interests "may be inadequate," and in evaluating that the Court should find that the "burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n.10 (1972) (internal quotations removed, emphasis added); *see also Dimond v. District of Columbia,* 792 F.2d 179, 192 (D.C.Cir.1986) (burden is "not onerous").

Here as shown by the <u>attached</u> letter from the DOJ, the DOJ has abruptly reversed positions and now says that removal restrictions on ALJs are unconstitutional. Put another way, the government now claims that the ALJ is subject to at-will appointment at the whim of the President (or Executive Branch), and no longer will argue that "good cause" removal restrictions are valid. More specifically as described in greater detail in section 1 of this part of the argument (Part III.A.1, *supra* at page 7–8)—the DOJ has publicly represented that the Acting Solicitor General "has decided that the multiple layers of removal restrictions for

administrative law judges in 5 U.S.C. § 7521 do not comport with the separation of powers and Article II." Attached. This is a direct *endorsement* of the holding in the District Court's declaratory judgment and a complete *repudiation* of the NLRB's arguments below. This means that, absent the Union intervening and arguing, there will be no party in this case advocating that the removal restrictions are constitutional. Thus, there is no way that the Union's interest will be adequately represented, let alone "may be adequately" represented, where, as here, the DOJ has abdicated its former position, leaving no party on appeal advocating the position that is in the Union's interest as demonstrated above.

Further, even when a non-party and government defendants *agree* on a legal position—and to be clear, that's not the situation here—this court has "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors" because the Government's obligation is to "represent the interest of the American people" while non-government parties typically have "more narrow" and "parochial" interests. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003). Therefore, even if only the District Court's denial of injunctive relief were at issue, the Union would still be entitled to intervention.[4]

---

[4] Additionally, the Union's separate interests would properly be weighted in this Court's analysis of the propriety of injunctive relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (before granting an injunction, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief").

In summary, while the NLRB has litigation authority independent of DOJ in the Courts of Appeal, this state of affairs at a minimum demonstrates that the Government's representation not only "may be"—but *will be*—inadequate on the key issue of ALJ decisional independence and removal protections. Moreover, even in the extremely unlikely event that the NLRB is given leeway to pursue arguments that are directly contrary to those expressed by the Acting Solicitor General, the Board's representation would *still* be inadequate—because the Attorney General and Solicitor General have sole litigation authority before the U.S. Supreme Court, *see* 28 U.S.C. § 518, absent intervention, the Union would be unable to protect its interests by means of a writ of certiorari, should one prove necessary.

## B.      The Union Has Standing Under Article III.

In this Circuit, in addition to meeting the requirements of Rule 24, "all would-be intervenors must demonstrate Article III standing . . . injury-in-fact to a legally protected interest, causation, and redressability." *Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1232–33 (D.C. Cir. 2018); *see also Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 316 (D.C. Cir. 2015) ("The standing inquiry for an intervening-defendant is the same as for a plaintiff.")

The Union has standing to intervene largely for the same reasons discussed in its analysis of the Rule 24 factors above (see supra at Part III.A). *See Roeder v.*

*Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) (standing discussion is "purely academic" because party that satisfies Rule 24 "will also meet Article III's standing requirements").  Both the deprivation of *any* forum to adjudicate its unfair labor practice charges and the deprivation of a forum where it would proceed before an impartial adjudicator with decisional independence are cognizable injuries-in-fact.  Causation is direct:  if Saint Vincent prevails on its cross-appeal, the Union would suffer the former injury; if the Board fails to prevail on its appeal and this Court affirms the District Court's declaratory judgment, it would suffer the latter.  And redressability directly follows:  a decision in the Board's favor on both appeals would ensure the Union's right to have its claims addressed in the forum it seeks.

### C.     In The Alternative, The Union Should Be Granted Permissive Intervention.

As with intervention by right, this Court looks to the Federal Rules of Civil Procedure for guidance on determining whether to allow permissive intervention on appeal.  *See EEOC v. National Children's Center, Inc*., 146 F.3d 1042 (D.C. Cir. 1998) (citing to Fed. R. Civ. P. 24(b) in evaluating permissive intervention on appeal).  In short, to intervene permissively, a proposed intervenor must "advance a [timely] 'claim or defense' that shares a common question with the claims of the original parties, with the apparent goal of disposing of related controversies together."  *Id*. at 1045.

The Union has already established that its motion is timely. The Union has largely already demonstrated that its motion for intervention raises common questions of law and fact. The Union intends to argue that Saint Vincent is not entitled to declaratory or injunctive relief against ALJ tenure protections, both as a matter of law and as a matter of equity. That is, of course, common to the very question of law at issue in the appeal. However, the Union's arguments would not simply cover the same ground as the NLRB—as explained *supra*, the Union's and the Board's interests are very likely to diverge in this matter.

Therefore, even assuming <u>arguendo</u> that the Court does not find that the Union shall be granted status as an intervenor pursuant to the "as of right" standards reviewed in Part III.A above, then still the Court should grant the motion to intervene under standards relating to permissive intervention.

## IV.  CONCLUSION

For the reasons stated above, the Union respectfully requests this Court to grant its motion to intervene, either as of right or by permission.

Respectfully submitted,

For the Massachusetts Nurses Association,

By its counsel:

*s/Jack J. Canzoneri*
McDonald Lamond Canzoneri, LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice
(508) 485-4477 Fax
jcanzoneri@masslaborlawyers.com

Dated:  February 18, 2025

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), counsel hereby certifies that the foregoing Motion for Leave to Intervene contains 4197 words, as counted by counsel's word processing system, and thus complies with the 5,200-word limit. *See* Fed. R. App. P. 27(d)(2)(A).

Further, this document complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure, 32(a)(5) and (a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word using size 14-point Time New Roman font

For the Massachusetts Nurses Association,

By its counsel:

*s/Jack J. Canzoneri*
McDonald Lamond Canzoneri, LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice
(508) 485-4477 Fax
jcanzoneri@masslaborlawyers.com

Dated:  February 18, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, I electronically filed the foregoing Motion to Intervene using the appellate CM/ECF system. The participants in this case are registered CM/ECF users and will be served by the appellate CM/ECF system.

For the Massachusetts Nurses Association,

By its counsel:

*s/Jack J. Canzoneri*
McDonald Lamond Canzoneri, LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice
(508) 485-4477 Fax
jcanzoneri@masslaborlawyers.com

Dated:  February 18, 2025

**ATTACHMENT**

**Letter dated February 11, 2025 - U.S. Department of Justice ("DOJ") in**
***Axalta Coating Systems, LLC v. FAA*, No. 23-2376 (3d Cir.)**



**U.S. Department of Justice**
Civil Division, Appellate Staff
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530-0001

Tel: (202) 532-4747

February 11, 2025

**By CM/ECF**

Patricia S. Dodszuweit
Clerk of Court
U.S. Court of Appeals for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA  19106

Re:    *Axalta Coating Systems LLC v. FAA,* No. 23-2376 (argument
        scheduled for Feb. 20, 2025)

We file this letter to notify the Court that the Acting Solicitor General has decided that the multiple layers of removal restrictions for administrative law judges in 5 U.S.C. § 7521 do not comport with the separation of powers and Article II and that the United States will no longer defend them in litigation.

Accordingly, at the oral argument scheduled for February 20, the government does not intend to press its merits defense of § 7521. Answering Br. 41-47.  But the government continues to argue that petitioner must demonstrate compensable harm from an allegedly unconstitutional removal restriction, Answering Br. 48-49, and the Court can resolve petitioner's removal claim on that ground.  *See NLRB v. Starbucks Corp.*, 125 F.4th 78, 88-89 (3d Cir. 2024).

Sincerely,

*/s/ Joshua M. Salzman*
Joshua M. Salzman
U.S. Department of Justice
Civil Division, Appellate Staff

**CERTIFICATES OF COMPLIANCE AND SERVICE**

I certify that this letter contains 123 words according to the count of Microsoft Office 365, and that this is within the word limit provided by Fed. R. App. P. 28(j).

I certify that on February 11, 2025, I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF system.  I certify that the participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

   */s/ Joshua M. Salzman*
JOSHUA M. SALZMAN